Good morning, Your Honors. I'm Jeffrey Patel, representing the appellant. In this case, I'm requesting that the court undertake a de novo review of the District Court's finding that the Terry stop was justified by reasonable suspicion. But when you undertake this review, I submit that there's two facts found by the District Court which should not be included in that review. One is the finding that the stop occurred in a high-crime area. I would contend that that finding was clearly erroneous. The reason being is that there was no specific testimony that the area where Mr. Rodriguez was stopped was a high-crime area. The only real reference to a high-crime area was at one portion during the testimony, a police officer said that during the five years that he had worked in that precinct, there had been murders, robberies, felonies, burglaries, run-of-the-mill crimes. I understand your argument about the high-crime area and also the concern about what weight, if any, should be given to the fact that they observed your client walking away when the police arrived. But there are two other grounds, and if you could address those as well. The manner in which Mr. Rodriguez was walking indicated that he was holding an object. That was one of the determinations. And that he tried to pass between the officers, this time holding the object in and below his waistband with both hands. Why isn't that enough? Well, I would contend that that alone is not enough. Certainly the manner while he was walking, as well as I'll acknowledge that they had previously arrested him for possession of a gun, that would perhaps rise to the level of a hunch. But in terms of him walking between the two police officers, they created a situation where that was the only way he could walk. He was walking in a group of five people on a sidewalk. The police officers were walking towards him on the sidewalk. They indicated that they were not . . . He might have had a stomachache or something and was holding his stomach. And even assuming that's plausible, but wasn't it also plausible that he was carrying a gun and that's why he was walking? It's not whether they were right or wrong, right? It's just whether it was a reasonable belief? I mean, it's certainly plausible that he was carrying a gun because he was carrying a gun. But it's also plausible . . . It's certainly plausible that he was acting like he was carrying a gun. But people carry cell phones, wallets, perhaps other things in their waistband and might hold them while they're walking. But, right, that's not the task. The task, as Judge Shin is saying, is not to say, well, what else could it be? But could it reasonably be interpreted as a weapon? Just like if it were a bulge in his shirt that was part of the observation, that wouldn't . . . would the other factors include it or not? That wouldn't be a hunch, even though you could speculate as to other things it might be. Well, I would submit that a bulge would certainly be a significant factor that would add to the reasonable suspicion. The question here is whether or not those factors rise to the question. Is it simply a hunch, which is not the same as reasonable suspicion? If you add in that it was 3.30 a.m., that there had been a report of a fight, there was a group gathered, there was . . . the officers observed a commotion of sorts, and if you add all that in, why isn't that reasonable suspicion? Because those factors are . . . as this Court said in Freeman when there was discussion about late at night, they're almost generic factors. People being outside on the street late at night in New York City is not too significant in a place where businesses are open twenty-four hours, where the subways run twenty-four hours. There had been a radio call of a commotion, there had been people gathering outside, but when the police arrived at the scene, while it looked like there was a verbal argument and people were holding back, they took no action. But in this case, once Mr. Rodriguez recognized the officers, he put both hands over his waistband area and above his crotch. Doesn't that seem to suggest that perhaps he was trying to hide something? Well, I don't know if he had recognized the officers. I mean, the officers . . . They recognized . . . one of them recognized him. They recognized him. I don't know. There's no testimony that Mr. Rodriguez recognized him. But when a person is confronted by two police officers on the street side-by-side and almost put in a position where he has to walk between them, whatever he was carrying, he might want to hold onto it so that it doesn't fall down, just as he would if he was being approached and had to walk between two other people. We have case law, as you know, United States v. Padilla, the 2008 decision of this court, where we held that even if the gesture, and I'm quoting, were consistent with conceivable innocuous adjustments, its distinctive consistency with the adjustment of a firearm provided the detective with a reasonable basis to suspect that the defendant was armed. And there's testimony here, am I not correct, that those gestures, Mr. Rodriguez's gestures, were consistent with the adjustment of a firearm? Well, that certainly was the officer's testimony, but those factors alone are not sufficient. And many of the other factors cited in this case are simply too innocuous to be considered in the determination of reasonable suspicion. And if the court, well, actually, I see my time's up. You'll have three minutes in rebuttal. Thank you. Good morning. May it please the court. My name is Jason Richman, and I'm an assistant United States attorney here in the Southern District of New York. I represented the government below, and I represent the government in this appeal today. Absent questions from the court, the government will be brief. The district court applied the correct law to- Mr. Richman, could you take on the suggestion that we should exclude from the analysis the lower court's determination that it was a high crime area because it's the, he says, the findings aren't grounded in the record? Thank you, Your Honor. The government submits that that was properly relied upon. I think it's important to remember the context in which Judge Hellerstein made that finding. It wasn't just it was late at night in the high crime area. It was also the officer's testimony that they were responding to reports of a loud fighter argument. What's really the evidence, though, that it is a high crime area? I mean, high crime has a certain kind of definition, doesn't it? So what's the, you know, what supports that view? Officer Gale, I believe, Your Honor, testified both to it being a high crime area in generic terms, which speaks to Your Honor's point, and also- But when does it qualify as, when does a neighborhood qualify as a high crime area? Is this what I think we want to understand? I don't know that there's a bright line rule to describe when there is a high crime area, Your Honor. In this case, Officer Gale testified both that it was a high crime area based on his experience in the precinct. He testified as to- What does that mean, though? In other words, is it high crime with respect to that neighborhood, high crime with respect to that borough, high crime with respect to the state, with respect to the country? I'm trying to get the contours, the parameters of your argument. I think Officer Gale's testimony, Your Honor, and what the district court relied upon was that it was high crime based on his own training and experience with the NYPD. So I don't know that he- What did he say? He said it was a high crime area. He said that he himself had witnessed murders, other violent crimes, and more generic crimes. And they also testified about his knowledge of the Hunts Point family, which was a local gang in the neighborhood, which was central to the reasonable suspicion that was eventually determined by the officers and was, more pointedly, involved with certain individuals who were at the scene at which he responded. So moving forward, Your Honor, the district court correctly applied the law, the totality of circumstances test, and correctly found a number of factors which supported reasonable suspicion that the officers had when they eventually stopped the defendant. Do you think if we were to just look at the position of the arms walking with the two hands and then the other, would it be your position that that would be sufficient alone? I think it could be, Your Honor. I think in certain circumstances, absolutely it could be. I think here there was detailed testimony concerning the officer's observation of the defendant initially walking away from the scene with his hand on his waist in a manner that seemed to imply that he was holding something. Continued testimony that as he walked away from the scene after the police van arrived, he kept his arm prone in that position. And that when he saw the officers, and I believe Judge Hellerstein in the bench ruling stated that he believed that the defendant recognized the officers, he moved both hands to his waist area. So in circumstances such as those where that's an isolated factor, which wasn't here, I do think there are certain times when that could support reasonable suspicion standing alone. In addition to these factors that we have discussed, of course, the officers also testified and Judge Hellerstein credited their knowledge of the local gang, the fact that they had arrested the defendant before, the fact that he walked away when a police van arrived, and the fact that he appeared nervous when they approached him on the sidewalk. Is there any evidence that he had, his role in the gang was to carry out gun-related crimes? Your Honor, the only testimony in the record concerning his gang affiliation was that the police arrested him from precinct set books and from their previous arrest of him, which was for a firearm crime, but there was no testimony that his role in the gang, so to speak, was to carry out gun-related crimes, no. Considering the totality of the circumstances, as this Court has long instructed, and considering the specific facts that were before the Court in their proper context, the District Court correctly found that there was reasonable suspicion to stop the defendant and subsequently search him for a firearm. Given that, the government submits that the judgment should be affirmed and the appeal should be dismissed. Absent further questions from the panel, the government rests on its brief. Thank you very much. Your Honor, I will acknowledge that even if the facts taken out that I heard should be taken out of the consideration, it remains a close case in terms of whether or not there was reasonable suspicion. But I submit in this case, the only real significant facts are the observation of the way he was walking and the prior knowledge of having arrested him and they knew who he was. But even though they had arrested him previously, one officer at the hearing tried to testify that he had a propensity for carrying guns, but he acknowledged that his use of that term propensity was really simply the prior arrest. So they only had a really limited knowledge of Mr. Rodriguez. They had arrested him once over a year earlier with a gun. They had seen his picture in a book of mugshots in the precinct, but had no other knowledge about his involvement in the gang. I submit that it's my position that those factors alone do not rise to the level of reasonable suspicion. Was it a good hunch? Yes. But was it reasonable suspicion? I argue that it was not. Thank you very much, Your Honors. Thank you both for your arguments. The court will reserve decision.